David Paul Biesemeyer
7650 E. Jim Cottrell
Palmer, AK 99645
907 982 2328
davebiesemeyer@hotmail.com
Pro Se

RECEIVED

AUG 22 2023

CLERK, U.S. DISTRICT COURT
~~D~~ ANCHORAGE, AK

Original

IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF ALASKA
ANCHORAGE DIVISION

DAVID PAUL BIESEMEYER

        Plaintiff

        Case No. 3:23 CV-00185-SLG

v.

        JURY TRIAL DEMANDED

THE MUNICIPALITY OF
ANCHORAGE, ALASKA

        Defendant

---

**PLAINTIFF'S COMPLAINT FOR DAMAGES UNDER THE FIFTH EIGHTH AND
FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION DUE TO AN
UNLAWFUL TAKING, AN EXCESSIVE FINE AND FEE AND VARIOUS DUE PROCESS
VIOLATIONS.**

---

COMES NOW the Plaintiff, David Paul Biesemeyer, and files this Complaint against

Defendant Municipality of Anchorage ("Defendant" "Municipality" or "Anchorage"):

**INTRODUCTION AND SUMMARY OF ACTION**

1

This is an action for declaratory and injunctive relief and for actual and compensatory

damages brought pursuant to the Fifth, Eighth, and Fourteenth Amendments to the United

States Constitution as a result of the confiscation and sale of Plaintiff's real property to satisfy debts allegedly owed to the government that operates as the Municipality of Anchorage.

2

The Plaintiff here alleges two federal question causes of action given cognizance under Tyler v. Hennepin County, No. 22-166, __ S. Ct. __, 2023 WL 3632754 (May 25, 2023):

(a) That the taking and selling of the Plaintiff's home by the Municipality of Anchorage to satisfy a tax debt, and keeping the surplus value as a windfall, violated the Takings Clause of the Fifth Amendment as applied to the States through the 14th Amendment; &

(b) That the forfeiture of the property, which is worth far more than the amount needed to satisfy the alleged tax debt plus interest, penalties, and costs, is an excessive fine, within the meaning of the Eighth Amendment as applied to the States through the 14th Amendment.

**PARTIES**

3

Plaintiff submits to the jurisdiction of this Court, and may be contacted by mail at the following address: 7650 E. Jim Cottrell Palmer, AK 99645. He proceeds herein Pro Se.

4

The Municipality of Anchorage is a municipal corporation organized and existing under the laws of the State of Alaska.  Pursuant to AK Stat § 29.35.010(14) (2022), it has the capacity to sue and be sued. As an entity, it resides in the Anchorage Division of the United States District Court for the District of Alaska.

2

Pursuant to AK Stat § 29.20.370 (2022) the Anchorage Municipal attorney represents the municipality as attorney in civil and criminal proceedings; therefore, the Municipal Attorney for Anchorage may accept service of summons and process on behalf of the municipality. As such, the Municipality of Anchorage may be served by serving process upon the Municipal Attorney or his authorized agents at 632 W 6th Ave Suite 730 Anchorage, AK 99501.

6

The Municipality may also be served by mail at by sending a copy of any requests for waiver of service and summons to the Municipality of Anchorage, Legal Department PO Box 196650 Anchorage, AK 99519.

## JURISDICTION AND VENUE

7

Plaintiff brings this action pursuant to the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

8

The unconstitutional taking of Plaintiff's property was committed within the Anchorage Division of the District of Alaska. Venue is proper in this Court under 28 U.S.C. § 1391(b) as every act of which Plaintiff complains occurred in the Anchorage Division of the United States District Court for the District of Alaska.

3

## ANTE LITEM REQUIREMENTS

### 9

To the best of Plaintiff's knowledge, information and belief, there are no administrative conditions precedent for purposes of bringing this action.

## LIMITATIONS OF ACTION

### 10

This action has been brought within the appropriate statute of limitations, 10 years, per either AK Stat § 09.10.230 (2022), dealing with claims regarding real estate, or AK Stat § 09.10.100 (2022), in that it is an action for a cause not otherwise provided, and therefore, may be commenced within 10 years after the cause of action has accrued.

### 11

To the extent that such a period is not the applicable period, the action is still brought within the applicable statute of limitations due to tolling: Any period of limitations that may otherwise apply will have been tolled during the period of disability which the Plaintiff was laboring under from 2014-2016 due to an accident that initially caused his clinical death and where, subsequent to his revival, he was undergoing rehabilitation and treatment from the accident for a period of not less than two years.

## STATEMENT OF FACTS

### 12

Approximately thirty years ago, the Plaintiff purchased a property that is referred to by the municipality as Tax Parcel 016-112-10-00012 Freeman Lot 11 in Anchorage Alaska, with a street address of 11500 Hawkins Ln, Anchorage, Alaska.

4

13

For decades, he lived on and paid taxes on the property known as Tax Parcel
016-112-10-00012 Freeman Lot 11 in Anchorage Alaska.

14

In early 2012, the Plaintiff received a tax notice for 2012 from the Municipality of
Anchorage for his property Tax Parcel 016-112-10-00012 Freeman Lot 11.

15

The tax notice indicated that Plaintiff was assessed the following amounts on his
property:  $6,676.41,  886.35, 45.00 for a total of 7,607.76.

16

Plaintiff sought to protest the municipality's assessments and right to collect taxes on this
particular property.

17

As a part of this process the Plaintiff did not pay the  $7,607.76 in assessed property
taxes on the Tax Parcel 016-112-10-00012 Freeman Lot 11 property before the end of 2012.

18

On March 7, 2013, the  municipality petitioned the superior court in case number
3AN-13-05671 CI for a judgment and decree of foreclosure on properties that included Tax
Parcel 016-112-10-00012 Freeman Lot 11.

19

On May 10, 2013, the municipality was granted a judgment and decree of foreclosure on
Tax Parcel 016-112-10-00012 Freeman Lot 11 in case number 3AN-13-05671 CI.

20

On November 10, 2014, the Honorable John Suddock, Judge of the Alaska Superior
Court, issued an Order in case number 3AN-13-05671 CI granting a request for a Clerk's Deed

5

on the subject property because the property was not redeemed within the one year period of redemption provided for under Alaska statutes.

21

On November 13, 2014, Cynthia Lee, Clerk of the Trial Courts for the State of Alaska, Third Judicial District, executed a Clerk's Deed in favor of the Municipality of Anchorage.

22

After the Municipality of Anchorage foreclosed on the property and obtained a Clerk's Deed, it issued a quitclaim deed to the Wehr Family Trust DTD 2008 and Larry E. Wehr, et al.

23

The Plaintiff had accrued a tax bill of $ 7,607.76 on the property at the time of the tax foreclosure; the Municipality sold the property for in excess of $243,235.29.

24

The property had an assessed market value of over $500,000.

25

At the time of the tax foreclosure, the Plaintiff owned the property free and clear other than the assessment of the taxes.

26

The Municipality retained all of the profits of the sale, which itself was for an amount that was half of its own assessed market value, and returned none of it to the Plaintiff.

27

By foreclosing on the Plaintiff's property for less than eight thousand dollars in tax assessments, the Municipality gained title to a half a million dollar property, and then sold it for less than half the market value and kept the excess from the sale over and above the amount of taxes claimed due and owing.

6

### 28

When a local government takes a home at a property tax foreclosure and keeps the homeowner's equity after the tax debt is paid, it violates the Takings Clause of the Fifth Amendment to the United States Constitution.

### 29

Here, the property at issue had a market value in excess of $500,000 - without considering the other personal property that was taken by the Municipality which was seized after the sale.

### 30

Here, the taxes owed on the property were far less than both the market value of the property and the amount the Municipality realized from the foreclosure.

### 31

Therefore, the taking of property worth far more than was needed to relieve a tax debt and retaining the profits violated the Takings Clause of the Fifth Amendment, the Excessive Fines Clause of the Eighth Amendment, and substantive due process.

## THEORIES OF RECOVERY

## FIFTH AMENDMENT TAKING CLAIM

### 32

The Supreme Court held in *Tyler v. Hennepin* that when a local government takes a home at a property tax foreclosure and keeps the homeowner's equity after the tax debt is paid, it violates the Takings Clause of the Fifth Amendment to the United States Constitution. Given this, and based on the facts alleged herein above, the Municipality of Anchorage has violated the takings clause, and the Plaintiff is entitled to be compensated for the equity in the home that

7

was lost after the tax foreclosure, less the amount of the tax debt which was paid from the proceeds of the sale.

### 33

The Takings Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."

### 34

An owner's right to surplus equity following a tax foreclosure is a well-established property interest that cannot be taken by the government without just compensation.

### 35

Here, a taxpayer has lost a $500,000+ house to the Municipality when it foreclosed on the home to satisfy a $7,607.76 tax debt; the Municipality then sold the house for less than half its market value, and kept an excess of over $230,000 in sale surplus.

### 36

This means that the Plaintiff made a far greater contribution to the public fisc than he owed, and the Municipality obtained a mega windfall even while disposing of the property at much less than its own assessed value for taxation purposes.

### 37

While it can be grudgingly admitted that the Plaintiff, a taxpayer, must render unto Caesar what is Caesar's, Caesar can only get his due and no more than his due.  So, while the County had the power to sell Plaintiff's home to recover the unpaid property taxes, it could not use the tax debt to confiscate more property than was due - yet it did so here, and in doing so effected a classic taking in which the government directly appropriates private property for its own use.

8

38

The final foreclosure of the Plaintiff's redemption right by the purchaser is 'the taking' for purposes of the Takings Clause. While this final step may be initiated by the private purchaser, it is nevertheless part of the overall tax foreclosure process conducted by the local municipality, making the government entity responsible for paying just compensation to the owner for the taking. Here, there can be no question that there was a taking.

39

The Supreme Court has held that just compensation is generally determined as of the date of the taking. United States v. 564.54 Acres of Land, 441 U.S. 506, 511 (1979). In a tax foreclosure case, this is the date when absolute title to the property is transferred from the homeowner to the government or private purchaser.

40

The Court has also held in takings cases that the constitutional requirement is premised on the principle of indemnity, that the amount of compensation is "measured by the property owner's loss rather than the government's gain." Brown v. Legal Found. of Washington, 538 U.S. 216, 235–236 (2003). The private party "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." Olson v. United States, 292 U.S. 246, 255 (1934). Thus, the homeowner's remedy should be an award of damages based on the difference between the value of the property and the total tax debt owed to the government.

41

In condemnation cases involving real property, the US Supreme Court has stated that courts generally have found that the owner is entitled to the "market value" or the "fair market value" of the property, United States v. Miller, 317 U.S. 369, 374 (1943), and that the owner has the burden to establish this value. United States ex rel. TVA v. Powelson, 319 U.S. 266, 273 (1943).

## 42

Plaintiff did not relinquish any interest in the surplus equity in his home due to his failure to pay property taxes. Neither did he relinquish any interest in the surplus equity by failing to return a (superfluous) W-9 sent to him by the Municipality. He is therefore entitled to be justly compensated for the difference in the tax debt owed and the equity he had in the home.

## 43

The Municipality here will likely argue that 'just compensation' should be the amount of the surplus proceeds, that is the difference between the total taxes owed and the auction sale price. But this amount is considerably less than compensation measured by the property's fair market value. If made, this argument should be rejected because the US Supreme Court has unambiguously held that a homeowner, like the Plaintiff, is entitled to recovery of compensation based on the equity lost as a result of the taking; therefore, the surplus proceeds from the municipality's sale of the property are not in and of themselves a complete representation of the Plaintiff's surplus equity in the home after the payment of taxes.

## 44

For these and other reasons stated herein above or below and/or otherwise supported by the facts sufficiently alleged, the Plaintiff is entitled to damages in amount to be determined at trial, to include actual, consequential, and compensatory as allowed by law, but in no case less than the amount of equity the Plaintiff lost as a result of the foreclosure sale, less the amount of the taxes otherwise due. At the very least, "[t]o withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take his property for public use without just compensation."

## EIGHTH AMENDMENT EXCESSIVE FINES AND FEES - CRUEL AND UNUSUAL PUNISHMENT

### 45

Plaintiff alternatively and concurrently argues that his loss of the surplus equity in the tax foreclosure proceeding was a monetary sanction that violated the Eighth Amendment Excessive Fines Clause, which is an incorporated protection applicable to the states under the Fourteenth Amendment Due Process Clause.

### 46

Here, the Alaskan statutory foreclosure scheme as executed by the Municipality of Anchorage is punitive because it serves a goal of punishment, that being deterrence, in that the tax-forfeiture scheme provides the ultimate possibility of loss of property and serves as a deterrent to those taxpayers considering tax delinquency.

### 47

As such, and as here, because the statutory scheme imposes a monetary penalty in order to deter willful noncompliance with the law, it is a fine, because economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.

### 48

Here, the Municipality foreclosed on a half-million dollar plus home and deprived the Plaintiff of its use and his property interest for a tax assessment of less than $8,000. It sold the home at less than half of its market value and then proceeded to keep the surplusage.

### 49

This was an excessive fine and/or fee under the Eighth amendment and is a cruel and unusual punishment to the extent that it acts as a deterrence against tax protestors or others engaging in a good faith dispute with the assessments.

50

For these and other reasons stated herein above or below and/or otherwise supported by the facts sufficiently alleged, the Plaintiff is entitled to damages in amount to be determined at trial, to include actual, consequential, and compensatory as allowed by law, but in no case less than the amount of equity the Plaintiff lost as a result of the foreclosure sale, less the amount of the taxes otherwise due. At the very least, to withhold the surplus from the owner violates the excessive fines and fees clause of the Eighth Amendment to the Constitution and constitutes cruel and unusual punishment.

51

Also, as to the excessive fines claim, Plaintiff argues that the statutory regime which authorized Anchorage to retain the surplus, imposes a fine within the meaning of the Eighth Amendment's Excessive Fines Clause.

52

The regime is at least partially punitive because it goes beyond compensation and also serves to deter future tax delinquency. Indeed, the regime is analogous to civil forfeiture schemes that Courts have previously characterized as punitive, and it fits within the Court's general understanding of punishment in the securities context.

**FOURTEENTH AMENDMENT VIOLATION OF DUE PROCESS**

53

With regard to the due process claims, both procedural and substantive, Plaintiff contends that while the state law has a post-foreclosure process to recover surplus equity, the period set out in which to claim the surplus denies equal protection of the law and rises to the level of a due process violation due to the state providing other mechanisms for claiming unclaimed property, and such mechanisms have much longer periods before the property

escheats to the state. The short nature of the temporal frame and the requirement that the former owner of the property has to affirmatively file a claim in that period else lose the property to the government rises to a deprivation of due process and equal protection of the law both in general and as applied here.

54

In other instances where the State or certain businesses are holding money for individuals and those funds have not been claimed, the money is turned over to the State treasury and placed in the 'unclaimed funds'

55

Furthermore, the process to claim or reclaim any excess from the foreclosure sale is designed to cause a loss in that it requires the government unit responsible for the foreclosure to wait for a person (who is known to the government) to affirmatively make an effort to claim the excess. Here, the municipality also interposed requirements to claim the funds that were unreasonable and unnecessary and not rationally related.

56

Here, the government seized the Plaintiff's property to satisfy a delinquent tax debt, and it has used the tax debt as a toehold to confiscate more property than it is owed.

57

While a government may seize and sell a homeowner's property to satisfy delinquent tax debts, it cannot use the tax debt as a toehold to confiscate more property than it is owed and retain surplus funds from the foreclosure sale used to satisfy the debts. This is because homeowners have a property interest in the equity of their homes.

58

Here, the Plaintiff had over half a million dollars equity in his home. The government seized it for less than eight thousand dollars in taxes. To date it has neither given the Plaintiff the amount of surplus from the sale nor has it compensated the Plaintiff for the fair market value

of his home over and above the amount of the surplus from the sale it conducted for which it deducted its tax debt.

59

The Municipality of Anchorage has been unjustly enriched as a result thereof, and such unjust enrichment is a violation of Plaintiff's due process rights.

**CONCLUSION**

60

As such, the Plaintiff asserts the following claims: (1) a federal takings claim against the Municipality of Anchorage; (2) A federal excessive fines and fees claim against the Municipality of Anchorage; (3) federal procedural & substantive due-process claims against the Municipality of Anchorage for unjust enrichment. As a result of these claims, the Plaintiff is entitled to relief from the Defendant.

**PRAYER FOR RELIEF**

The relief which the Plaintiff prays for is that he be made whole; specifically:

1.      The Municipality of Anchorage should be ordered to pay the Plaintiff the fair market value of the home it took, with interest, pursuant to the takings clause of the Constitution, less the amount of taxes it claims were due - irrespective of the amount of the surplus realized by the Municipality on the actual sale; or in the alternative,

2.      The Municipality of Anchorage should at least be ordered to pay over to the Plaintiff the surplusage received over and above the amount of the taxes realized by its sale of the property in question along with interest,

14

3.     The Municipality of Anchorage should be ordered to pay the expenses of this action.

4.     Whatever other such relief as the Court may deem necessary and proper.


Plaintiff also requests a jury trial on all issues, matters, and questions of fact as allowed by law.

Respectfully submitted, this ___17th___ day of __August__, 2023

DAVID PAUL BIESEMEYER, Pro Se
Plaintiff above named

7650 E. Jim Cottrell
Palmer, AK 99645
907 982 2328
davebiesemeyer@hotmail.com


## VERIFICATION

COMES NOW the undersigned who declares under penalty of perjury that the foregoing

is true and correct to the best of the affiant's knowledge, information, and belief.

DAVID PAUL BIESEMEYER, Pro Se
Plaintiff above named

Sworn to and Subscribed Before
Me this 17 Day of August, 2023

Notary Public

My Commission Exp: March 11, 2027

NOTARY PUBLIC CERTIFICATION
Sheena Nakano                    Third Circuit
Doc. Description Plaintiff's Complaint for Damages under the
Fifth Eighth & Fourteenth Amendments of the United States
Constitution due to an unlawful taking an excessive Fine a Fee &
No. of Pages ___15___ Date of Doc. 8/17/23    Various due
                                              Process Violations

Notary Signature                    8/17/23
                                    Date



FROM:

David Paul Biesmeyer
7650 E. Jim Cottrell
Palmer, AK 99645

TO:

Clerk, US District Court
Anchorage Division
222 W. 7th Avenue
Room 229 Box/Ste 4
Anchorage Alaska
99513

UNITED STATES POSTAL SERVICE.   Retail

**G**   US POSTAGE PAID
**$8.55**   Origin: 96704
08/18/23
1403000300-08

USPS GROUND ADVANTAGE™

0 Lb 13.60 Oz
RDC 01

C095

SHIP TO:
222 W 7TH AVE
STOP 4
ANCHORAGE AK 99513-7504

USPS TRACKING® #

9500 1114 6546 3230 7773 73

**Utility Mailer**
**10 1/2" x 16"**

Ready**P**ost