# EXHIBITS TO AMENDED COMPLAINT
# IDENTIFIED & ADOPTED WITH COMMENTARY & ARGUMENT

i.      The following items are identified as Exhibits to the Plaintiff's First Amended Complaint. Their contents are incorporated into the Complaint as if set out verbatim therein for purposes of stating a claim and either overcoming the limitations period through equitable tolling or using equitable estoppel to prevent the Municipality from asserting the limitations defense.

ii.     There are facts asserted to sound sufficiently in either equitable tolling or equitable Estoppel to sustain such as proper exercise of the Court's discretion.

iii.    The descriptions of the document and the commentary are also adopted as if set out verbatim in the body of the Amended Complaint.

iv.    The facts alleged may indicate that the Municipality would be subject to punitive liability under the Note 29 Exception, should the Court determine for purposes of this action that "the taxpayers" are the mortgage companies as opposed to the homeowners that pay the mortgage.

**1.**     **Certificate of Redemption dated January 5, 2015,** on Beacon Park, BLK 1, LT 23, Acct No. 018-022-18-00014, which had been subject to a decree of foreclosure entered on June 25, 2014, under Case Number 3AN-14-05422 Civil, recorded July 9, 2014 Recorder's Serial No. 2014-026416-0

**2.**     **Quitclaim Deed dated April 23, 2015,** from the Municipality of Anchorage to Wehr Family Trust DTD 2008, Carolyn M. Wehr, et al, Trustees 50% & Michael R. Wehr 50%, concerning Lot 11 Freeman Subdivision, also known as tax parcel 016-112-10-000; further known as 11500 Hawkins Lane.

**3**     **Final judgment dated September 9, 2016** in Case No. 3AN-15-10092 CI, the Quiet Title action brought by The Wehr Family Trust, et al, against David Paul Biesemeyer vesting all

right and title to the the Trust, et al. It is stamped 'accepted' with Biesemeyer's signature stamp underneath it and dated January 17, 2017. It awards costs and attorney's fees to the Plaintiff as well.

**4.0     Letter dated April 29, 2015,** from Jacque L. Tennis to David Paul Biesemeyer under official municipal letterhead.

4.0.1    It is regarding the claim of excess proceeds from sale of tax parcel ID 016-112-10-000, Feeman Subdivision, Lot 11, Anchorage.

4.0.2    The purpose of the letter is to advise the property sold at public sale on April 15, 2015.

4.0.3    It also informs that as the record owner of the property immediately before it was acquired through tax foreclosure, Biesemeyer has the right to 'Request' excess proceeds.

4.0.4    By its terms, the letter required that the request must be in writing, on the form at the bottom of the letter, and within six months of the sale.

4.0.5    To be timely, the letter indicates that Tennis, a Junior Administrative Officer, must receive the signed notarized form along with a completed W9 by October 15, 2015.

4.0.6    It also locks the excess in at $235,627.53.

**4.1     An acceptance dated May 11, 2015,** from David P. Biesemeyer to the Municipality of Anchorage which accepts the terms of the April 29, 2015 letter regarding claiming the excess proceeds.

4.1.1    Biesemeyer's acceptance for the value of the presentments within the letter, returned for that value those offers made. He requests an order of the Court, and indicates that, by his signature and date, he accepted the offer to claim the excess. He did not argue the facts, because he agreed with the Municipality that he was entitled to the excess.

4.1.2    He requested they close the account and issue the Order of the Court [A Check] immediately.

4.1.3   Biesemeyer specifically wanted to ensure that the Municipality adjusted and set off all public charges [Tax Liability] still outstanding.

4.1.4   Finally, Biesemeyer requested discharge from the matter.

4.1.5   The form of this acceptance is not the fiat which the junior administrative officer in real estate services requested, but the acceptance was substantively sufficient to place the Municipality on notice of his claim.

4.1.6   He did request that the Municipality contact him within three (3) days of the date the Acceptance was received.  The customary three day mailing rule, plus three more days to acknowledge the acceptance or notify Biesemeyer that his claim attempt was statutorily deficient (Not merely a failure to conform to the fiat requirements of a junior administrative officer) would calendar the requested response for May 17, 2015.

**4.2    A notice of dishonor, dated May 28, 2015,** which memorializes in an admittedly anachronistic manner that there had been no response from the Municipality with regard to Biesemeyer's acceptance of the Municipalities offer for him to claim the excess funds at least as of the date of the document.

4.2.1   It is a record kept in the normal course of Biesemeyer's business.

4.2.2   Immediately over Biesemeyer's signature stamp, the document its face states Biesemeyer's intention to look to the Municipality for payment.

**5.0    A letter dated Tuesday May 19, 2015,** from the Deputy Clerk of Trial Court Accounting to David Biesemeyer, under the official letterhead of the Trial Courts of the State of Alaska's Third Judicial District on the subject of the excess funds held in case number 3AN-00-987SC.

5.0.1   The Deputy Clerk goes on to relate that before the funds are released, they needed to 'confirm' that he was THE David Biesemeyer.

5.0.2   This confirmation, which consisted of filling out, signing, and returning the TF 955 form

on the back of the letter, had to happen in 15 days or the Court was going to forward the funds to the Unclaimed Property Division of the State of Alaska.

5.0.3   Biesmeyer was specifically told not to call the court with questions.

5.0.4   The letter then reassured that it would be Biesemeyer's prompt filing of the TF-955 form that would 'assist the court in remedying the proper disbursement of the above mentioned funds' - a sentence that looks like it says something, but on closer inspection raises questions.

5.0.5   The Deputy Clerk concludes with the imperative to fill out the change of address form and return it to the Alaska Court System.

5.0.6   They closed with a disclaimer that if this Biesemeyer is not THE Biesemeyer, then disregard the letter.

5.0.7   The letter was sent to the address on file for the litigant involved, which the Court knew, or should have known, was the address from which Biesemeyer was sending and receiving mail on the matter.

5.0.8   The Deputy Clerk of Trial Court Accounting was unlikely to have sent another letter to David Biesemeyer.

5.0.9   Of note, however, is that markings on the letter made contemporaneous to the events in question, indicates that Biesemeyer 'accepted' ('received') it on June 15, 2015; the date of the letter is May 19, 2015.

5.0.10  The letter required Biesemeyer to respond with confirmation information within fifteen days of the date on the letter.

5.0.11  The letter was received well after 15 days had passed from the date under the letterhead.

5.0.12  Fifteen days after May 19 is June 3.

5.0.13  Biesemeyer did not receive the letter until June 15, 2015, making a timely response, even using the preferred Notice of Change of Address, impossible.

5.0.14  It is unusual that a letter - this letter in particular - sent from one place in Anchorage to a

place near Anchorage would take so long to arrive in these circumstances.

5.0.15 Since Biesemeyer did not respond by June 3, 2015, the Court should have forwarded the funds to the Unclaimed Property Division of the State of Alaska, per its notice.

5.0.16 It did not.

5.0.17 Where did the funds go?

5.0.18 The date on the letter from the Deputy Clerk requesting address confirmation before releasing the funds could reasonably be viewed as what happened when the Municipality acknowledged Biesemeyer's acceptance to be sufficient for purposes of filing the claim for the excess funds and subsequently forwarded the matter to the Trial Court Accounting Division for final payment. **SEE EX. 13, infra.**


**5.1** **The reverse of the letter referred to as (5), above,** which is a TF-955 Notice of Change of Address/Telephone Number.

5.1.1 By its terms, it is only applicable where the party making the Notification through the Notice has CHANGED his or her address or telephone number.

5.1.2 As Biesemeyer had not changed his address or telephone number, this form, though colorable, is neither applicable nor exclusively the means to sufficiently confirm that a party's address, consistently used for litigation and on other correspondences originating from the party, is still the address to use for matters concerning the litigation and other correspondence.


**5.2** **An acceptance dated June 15, 2015,** from David P. Biesemeyer to the Trial Accounting Division of the State of Alaska's Third Judicial District accepts the terms of the May 19, 2015 letter which requested confirmation of his address and identity as the person named in 3AN-00-987SC entitled to claim the funds held in the Court's registry under that name.

5.2.1 The acceptance was dated 12 days past the 'respond by' date in the letter; this is because Biesemeyer did not receive the letter until 12 days after its terms had expired.

5.2.2  Biesemeyer's anachronistic acceptance on the day he received the letter confirmed that his receipt of the letter, and, while not disavowing the Jim Cottrell Circle address in Palmer, which the Court sent the letter to, the letter provided a confirmed up to date address, which was a PO Box in Anchorage.

5.2.3  A PO Box Biesemeyer had also used for correspondence with the Court during the litigation.

5.2.4  His acceptance authorizes requesting an order of the Court [to disburse a check], and by his signature and date, (As well as the address printed below the signature and date) he accepted the Deputy Clerk's stated need for address confirmation.

5.2.5  By his response to that letter, which he denoted as a 'non-negotiable notice of acceptance' Biesemeyer provided the required confirmation.

5.2.6  He did not argue the facts, [because he agreed to the need to confirm his address.]

5.2.7  He requested they close the account and issue the Order of the Court [A Check] immediately.

5.2.8  Biesemeyer specifically wanted to ensure that any further obligations would be adjusted and set off if any remained still outstanding.

5.2.9  Finally, Biesemeyer requested discharge from the matter. He wanted it over.

5.2.10  Admittedly, the form of this acceptance is neither in the manner nor by the method requested by the Deputy Clerk, but the acceptance was substantively sufficient to confirm the issue of his address and identity as the person for whom the money is held in the registry.

5.2.11  He did request that the Clerk or the Court contact him within three (3) days of the date the Acceptance was received.  The customary three day mailing rule, plus three more days to acknowledge the acceptance or notify Biesemeyer that his method of confirmation and notice of address was statutorily deficient (Not merely the failure to use a form that at best is merely colorable in its relevance, and not a substantive. exclusive pre-requisite) would calendar the requested response for June 21, 2015.

**5.3 These are records made on June 15, 2015**, in the course of Biesemeyer's business which indicate the date and places he sent his acceptance to confirm his address and identity. In addition to sending a copy to the address required by the May 19, 2019, letter

5.3.1 One of those who received a copy of the Acceptance, which had attached with it a copy of the original letter from the Trial Court Accounting Division, was the office of the Director of Real Estate Services for the Municipality of Anchorage.

5.3.2 His turnaround of the acceptance and the records memorializing the same indicate that Biesemeyer acted with sufficient diligence.

**5.4 Biesemeyer's compliance with the statutory claim filing process, though not conforming to the dictates of the Junior Administrative Officer sending the letter, was sufficient to have the matter forwarded to the Trial Court Accounting Division for Payment.**

5.4.1 The letter from the Accounting Division indicated that the money was his upon confirmation of his address and identity.

5.4.2 A reasonable person could determine that the acceptance, sent after receiving the letter from the Municipality, was sufficient to authorize the Trial Court to release the funds in its registry to Biesemeyer - which is why the trial court sent him a letter requesting confirmation of his address prior to releasing the funds.

5.4.3 At the point of the letter from the trial court, EX 5.0, any conditions or issue present or alluded to in the letter regarding claiming the excess funds from the Municipality, EX 4.0, were superseded, because sufficient claim had been made that the trial court would release the funds upon confirmation of Biesemeyer's address and identity.

**5.5 Biesemeyer was already too late to respond to the Deputy Clerk's letter when he**

**received it;** as such, the Municipality should have already take steps to forward the funds to the Unclaimed Property Division of the State of Alaska at or around the time Biesemeyer was preparing his Notice of Acceptance which, for our purposes, served to confirm his address and identity in a manner at least as effective as a non-applicable form that was merely inserted to be a colorable gloss to a *'He did not hold his mouth right'* defense.

**5.6 The results printed out and attached are the results of a search of the State of Alaska's Unclaimed Property Division.**

5.6.1 On August 8, 2023, the database for the State of Alaska's Unclaimed Property Division was searched in an attempt to ascertain if the funds had been turned over as the Court's accounting division indicated it would be if response was not made fifteen days from the date of its letter.

5.6.2 Given that the Court did not give Biesemeyer the funds after he confirmed his address and identity, and given that according to the terms of the document that required the address and identity confirmation arrived after the expiration of the period for response, the Unclaimed Property Division of the State of Alaska should have custody and control of the funds until either (1) the limitations period for claiming unclaimed funds held by the State expires, and the property escheats to the state or (2) Biesemeyer files a claim for the property.

5.6.3 As of August, 2023, the excess funds were not listed and did not appear to be among the unclaimed funds that are held in Biesemeyer's name.

5.6.4 As of August 2023, it does not appear on record that the funds were sent. SEE EX 13, Infra.

**6.0 Printout memorializing the Bar Standing of Daniel R. Kirkham, MD, JD, in April of 2015.** At this time, Kirkham was an active member of the California Bar. It would take from 2004 to 2017 for Kirkham to be disbarred for his convictions on the felonies of moral turpitude.

**6.1 Printout memorializing the Bar Standing of Daniel R. Kirkham, MD, JD, on March 27, 2024.** Kirkham was disbarred due to a tax evasion conviction on Monday, April 9, 2018, and he is no longer an active member of the California Bar.

**6.2 Stipulation of Facts and Conclusions of Law Prepared by the California State Bar Court's Hearing Department in regards to Dan Romaine Kirkham's disbarment.**

6.2.1 The original draft of the document was effective November 1, 2015, by its terms, and was not made public until October 26, 2017.

6.2.2 This would be sufficient to support an inference that Kirkham and company were aware of an inability to perform, yet nonetheless made a conscious deliberate choice to defraud Biesemeyer.

**6.3 A copy of *US v. Kirkham*, Case No. 00-539-KI, USDC for the district of Oregon 12/2/05,** which denied Kirkham's Motion to review and reconsider the sentence arising from his conviction of conspiracy to defraud the United States and attempting to evade and defeat payment of tax.

**6.4 A Department of Justice Press Release 2/18/05 Entitled "Three Defendants Imprisoned for Tax Fraud Conspiracy.**

6.4.1 The second to last paragraph mentions Kirkham in the next to last sentence.

**7.0 LinkedIn profile for Joe Enos Farias,** the 'Guardian of Souls that Look (sic) Over Their Welfare and Their Well-Being' as Fulfilling the Law Center Overseer & Successors, A (sic) Ecclesiastical Corporation Sole.

7.0.1 Mr. Farias provided self-study legal educational materials and assisted Biesemeyer prior

to his retaining Kirkham and Company.

**8.0 A Notice of Breach of Covenant by Billy Travis Severance (Billy Everson)** which was a contemporaneous note Biesemeyer made of his present sense impressions involving Kirkham & Everson/Severance.

8.0.1 It is both a statement and a summary of events that are represented in the Amended Complaint for purposes of reciting sufficient facts to authorize equitable tolling - Extraordinary circumstances and ineffective assistance of counsel - as a sound exercise of judicial discretion.

**9.0 A Notice and Repentance of Sin dated May 14, 2015, written so as to give the reader the impression that it was written by Biesemeyer, but it was not.**

9.0.1 This document was drafted by Kirkham and sent to Biesemeyer in the envelope (9.0A) postmarked 14 May 2015 and addressed to Biesemeyer from Kirkham.

9.0.2 If the money is not with the Municipality and it is not in the Court registry, nor is it in Unclaimed property, did Kirkham and/or Severance intercept the disbursement and not say anything?

9.0.3 That would be the question had not the Municipality admitted to the act of taking and keeping the money in its Motion to Dismiss the Original Complaint while arguing its lack of liability arose out the expiration of the limitations period.

9.0.4 The Court dismissed the original Complaint with leave to Amend and allege facts sufficient to support an extension or waiver of the limitations period.

9.0.4 Upon allegations of sufficient facts to support extension or waiver, the Court determined that a claim for an Eighth Amendment Excessive Fines and Fees Claim had been stated.

9.0.5 Upon stating a Claim, the Municipalities admissions *in judicio* in its Motion to Dismiss would seem to establish liability as a matter of law, and the only consideration for a jury would be on damages.

**10.0   Document prepared by Kirkham and Everson and given to Biesemeyer sometime in 2015.**

10.0.1  It is captioned as a Notice of No Ability to Sustain a Persona Standi In Judicio, but has a disclaimer that it is not a pleading.

10.0.2  It was never filed with the Court.

10.0.3  This document speaks for itself.


**10.1   A document denoted as a private covenant in Deed that was signed by Biesemeyer and Billy Travis Severance, also known as Billy Everson, and dated March 22, 2015.**

10.1.1  This document speaks for itself.


**10.2   A document revision dated March 22, 2015, that is titled "An American's Declaration of Belief and Understanding, by Dan Romain Kirkham, MD JD.**

10.2.1  It is further styled as a "Declaration & Affidavit of _____ (your name)."

10.2.3  This document speaks for itself.


**11.0   These documents represent a series of correspondences between Biesemeyer and Severance/Everson wherein Biesemeyer confirms payment sent and outlines expectations and concerns.**

11.0.1  It is a one sided colloquy because 'Billy' did not write back.

11.0.2  These letters are dated  December, 2015,  January 9, 2016, February 2016, March 1, 2016, another one for March 2016, April 4, 2016, June 8, 2016, & August 2016.

11.0.3  They speak for themselves, but provide a contemporaneous narrative record for the period.

11.0.4  An observer is authorized to infer that neither Kirkham nor Severance/Everson genuinely adhered to the principles, nor did they appear sufficiently qualified to initiate or fulfill a contract of the nature they entered into with Biesmeyer—a contract that notably resulted in payments exceeding $50,000, notwithstanding the loss of the property and the excess funds. .

11.0.5  A close examination of the documents and transactions raises peculiar questions, particularly regarding their capacity to claim or file things in Biesmeyer's name unbeknownst to him by using his signature stamp.

11.0.6  This situational capacity would also extend to the excess funds, which are unaccounted for, with neither the Court nor the Unclaimed Property Division of the State of Alaska in possession of them had not the Municipality already admitted to the taking and keeping but argued too much time had passed and there was no reason on record to sustain an extension or waiver. .

11.0.7  According to the Court's directives, any surplus was to be allocated to the Unclaimed Property Division of the State of Alaska, should there be no response to its address verification inquiries within 15 days from the dispatch of its letter.

11.0.8  Despite these clear instructions, the surplus funds remain unaccounted for —not within the Unclaimed Property Division, nor with the Court.

11.0.9  It is important to note that the Court was authorized solely to allocate funds to the Municipality corresponding to the owed taxes, leaving the handling of the excess funds a matter of concern and inquiry by the real party interest.


**12.0    The documents in this exhibit are a record of expenses paid by Biesemeyer to Severance/Everson & Kirkham.**

12.0.1  These Documents speak for themselves.


**13.0    Documents from the Alaska Department of Unclaimed Property from April 3, 2024.**

13.0.1 There is no, nor has there been, a $230K =/- deposit into the Unclaimed Property Division's care for David Biesemeyer from 2015 until the present.

13.1 The Municipality should be equitably estopped from claiming the limitations defense because of how it went down with them not sending the letter until it was too late to claim the excess before it was supposed to be sent to the Unclaimed Property Division.

13.1.1 Sending the letter too late, combined with not even sending the money like the law says it should have indicates scienter in an is evidence of a pattern of behavior that could be determined to arise out of the Municipality's desire to make an example out of what it considered to be a tax protestor.

13.1.2 Keeping the excess funds can be characterized as the Municipality doing indirectly (Punish the Person by taking all their things) what they could not do directly (Punish a person by taking all their things)

13.1.3 It is excessive for a $ 7.7K starting tax assessment to result in the forfeiture at auction of the assessed property for $250K where the taking entity values the home at approximately $600K and then keeps the entire proceeds.

13.1.4 It is indicative of some sort of culpable intent that the Municipality went to some length to appear to comply with the law when, on inspection, it fulfilled none of its duties under the law and actually took steps to convert the excess funds and hide the act of conversion.

13.1.5 That is the reason that the Municipality should not enjoy the benefit of the limitations defense.

13.1.6 The fact that Biesemeyer was the victim of an insidious scam by someone who he thought was, and indeed was, an attorney hired to handle the matter, from 2015 to approximately 2019, and the fact that he was the victim to a multitude of other extraordinary circumstances at the time, when combined with the Municipalities bad acts, should be sufficient to sustain a finding of equitable tolling as a sound exercise of discretion.

# INDEX OF EXHIBITS TO FIRST AMENDED COMPLAINT

<u>FOR A MORE SPECIFIC DESCRIPTION, SEE WHERE THE EXHIBITS TO AMENDED COMPLAINT ARE IDENTIFIED &
ADOPTED WITH COMMENTARY & ARGUMENT</u>

1. Certificate of Redemption dated January 5, 2015.

2. Quitclaim Deed dated April 23, 2015.

3 Final judgment dated September 9, 2016 in Case No. 3AN-15-10092 CI.

4.0 Letter dated April 29, 2015.

4.1 An acceptance dated May 11, 2015.

4.2 A notice of dishonor, dated May 28, 2015.

5.0 A letter dated Tuesday May 19, 2015.

5.1 The reverse of the letter referred to as (5), above.

5.2 An acceptance dated June 15, 2015.

5.6 The results printed out and attached are the results of a search of the State of Alaska's Unclaimed Property Division.

6.0 Printout memorializing the Bar Standing of Daniel R. Kirkham, MD, JD, in April of 2015.

6.1 Printout memorializing the Bar Standing of Daniel R. Kirkham, MD, JD, on March 27, 2024.

6.2 Stipulation of Facts and Conclusions of Law Prepared by the California State Bar Court's Hearing Department in regards to Dan Romaine Kirkham's disbarment.

6.3 A copy of *US v. Kirkham*, Case No. 00-539-KI, USDC for the district of Oregon 12/2/05.

6.4 A Department of Justice Press Release 2/18/05 Entitled "Three Defendants Imprisoned for Tax Fraud Conspiracy.

7.0 LinkedIn profile for Joe Enos Farias

8.0     A Notice of Breach of Covenant by Billy Travis Severance (Billy Everson)

9.0     A Notice and Repentance of Sin dated May 14, 2015, written so as to give the reader the impression that it was written by Biesemeyer, but it was not.

10.0    Document prepared by Kirkham and Everson and given to Biesemeyer sometime in 2015.

10.1    A document denoted as a private covenant in deed that was signed by Biesemeyer and Billy Travis Severance, also known as Billy Everson, and dated March 22, 2015.

10.2    A document revision dated March 22, 2015, that is titled "An American's Declaration of Belief and Understanding, by Dan Romain Kirkham, MD JD."

11.0    These documents represent a series of correspondences between Biesemeyer and Severance/Everson wherein Biesemeyer confirms payment sent and outlines expectations and concerns.

12.0    The documents in this exhibit are a record of expenses paid by Biesemeyer to Severance/Everson & Kirkham.

13.0    Documents from the Alaska Department of Unclaimed Property from April 3, 2024.