# 6.2 Stipulation of Facts and Conclusions of Law Prepared by the California State Bar Court's Hearing Department in regards to Dan Romaine Kirkham's disbarment.

(Do not write above this line.)

*ACCEPTED*
*Dan Romaine Kirkham*
*Day 12 Month 10 Year*

*3247*
*CE*

# State Bar Court of California
## Hearing Department
## Los Angeles
### DISBARMENT

| Counsel For The State Bar | Case Number(s): 17-C-01261-CV | For Court use only |
|---|---|---|
| Jennifer Kishimizu Pinney<br>State Bar of California<br>845 S. Figueroa Street<br>Los Angeles, CA 90017<br>(213) 765-1349<br><br>Bar # 280869 | | **PUBLIC MATTER**<br><br>**FILED**<br>OCT 23 2017<br>STATE BAR COURT<br>CLERK'S OFFICE<br>LOS ANGELES |
| In Pro Per Respondent<br><br>Dan Romaine Kirkham<br>Dan Romaine Kirkham Law<br>420 N. McKinley #111-466<br>Corona, CA 92879-8099<br>(951) 760-2448<br><br>Bar # 60324 | Submitted to: Settlement Judge<br><br>STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING; ORDER OF INVOLUNTARY INACTIVE ENROLLMENT<br><br>**DISBARMENT** | |
| In the Matter of:<br>DAN ROMAINE KIRKHAM<br><br>Bar # 60324<br><br>A Member of the State Bar of California<br>(Respondent) | ☐ PREVIOUS STIPULATION REJECTED | |

Note: All information required by this form and any additional information which cannot be provided in the space provided, must be set forth in an attachment to this stipulation under specific headings, e.g., "Facts," "Dismissals," "Conclusions of Law," "Supporting Authority," etc.

## A. Parties' Acknowledgments:

(1) Respondent is a member of the State Bar of California, admitted **August 16, 1974**.

(2) The parties agree to be bound by the factual stipulations contained herein even if conclusions of law or disposition are rejected or changed by the Supreme Court.

(3) All investigations or proceedings listed by case number in the caption of this stipulation are resolved by this stipulation and are deemed consolidated. Dismissed charge(s)/count(s) are listed under "Dismissals." The stipulation consists of **(10)** pages, not including the order.

(4) A statement of acts or omissions acknowledged by respondent as cause or causes for discipline is included under "Facts."

kwiktag® 226 153 467

(Do not write above this line.)

*"Accepted"*
*Dr. Pontrick Knight*
*Month 10*
*Day 12*
*Year 2017 CE*

(5) Conclusions of law, drawn from and specifically referring to the facts are also included under "Conclusions of Law."

(6) The parties must include supporting authority for the recommended level of discipline under the heading "Supporting Authority."

(7) No more than 30 days prior to the filing of this stipulation, respondent has been advised in writing of any pending investigation/proceeding not resolved by this stipulation, except for criminal investigations.

(8) Payment of Disciplinary Costs—Respondent acknowledges the provisions of Bus. & Prof. Code §§6086.10 & 6140.7. (Check one option only):

☒ Costs to be awarded to the State Bar.
☐ Costs are waived in part as set forth in a separate attachment entitled "Partial Waiver of Costs"
☐ Costs are entirely waived.

(9) ORDER OF INACTIVE ENROLLMENT:
The parties are aware that if this stipulation is approved, the judge will issue an order of inactive enrollment under Business and Professions Code section 6007, subdivision (c)(4), and Rules of Procedure of the State Bar, rule 5.111(D)(1).

## B. Aggravating Circumstances [Standards for Attorney Sanctions for Professional Misconduct, standards 1.2(h) & 1.5]. Facts supporting aggravating circumstances are required.

(1) ☐ **Prior record of discipline**

  (a) ☐ State Bar Court case # of prior case

  (b) ☐ Date prior discipline effective

  (c) ☐ Rules of Professional Conduct/ State Bar Act violations:

  (d) ☐ Degree of prior discipline

  (e) ☐ If respondent has two or more incidents of prior discipline, use space provided below:

(2) ☒ **Intentional/Bad Faith/Dishonesty:** Respondent's misconduct was dishonest, intentional, or surrounded by, or followed by bad faith. **See Attachment, page 7.**

(3) ☐ **Misrepresentation:** Respondent's misconduct was surrounded by, or followed by misrepresentation.

(4) ☐ **Concealment:** Respondent's misconduct was surrounded by, or followed by concealment.

(5) ☐ **Overreaching:** Respondent's misconduct was surrounded by, or followed by overreaching.

(6) ☐ **Uncharged Violations:** Respondent's conduct involves uncharged violations of the Business and Professions Code or the Rules of Professional Conduct.

(Do not write above this line.)

*"Accepted"*
*D. n Romcin/Kirkw*
*Menth 10*
*Day 13*

(7) ☐ **Trust Violation:** Trust funds or property were involved and Respondent refused or was unable to account to the client or person who was the object of the misconduct for improper conduct toward said funds or property.           *Year 2017*

(8) ☐ **Harm:** Respondent's misconduct harmed significantly a client, the public, or the administration of justice.

(9) ☐ **Indifference:** Respondent demonstrated indifference toward rectification of or atonement for the consequences of his or her misconduct.

(10) ☐ **Lack of Candor/Cooperation:** Respondent displayed a lack of candor and cooperation to victims of his/her misconduct, or to the State Bar during disciplinary investigations or proceedings.

(11) ☐ **Multiple Acts:** Respondent's current misconduct evidences multiple acts of wrongdoing.

(12) ☐ **Pattern:** Respondent's current misconduct demonstrates a pattern of misconduct.

(13) ☐ **Restitution:** Respondent failed to make restitution.

(14) ☐ **Vulnerable Victim:** The victim(s) of Respondent's misconduct was/were highly vulnerable.

(15) ☐ **No aggravating circumstances** are involved.

**Additional aggravating circumstances:**

## C. Mitigating Circumstances [see standards 1.2(i) & 1.6]. Facts supporting mitigating circumstances are required.

(1) ☐ **No Prior Discipline:** Respondent has no prior record of discipline over many years of practice coupled with present misconduct which is not likely to recur.

(2) ☐ **No Harm:** Respondent did not harm the client, the public, or the administration of justice.

(3) ☐ **Candor/Cooperation:** Respondent displayed spontaneous candor and cooperation with the victims of his/her misconduct or to the State Bar during disciplinary investigations and proceedings.

(4) ☐ **Remorse:** Respondent promptly took objective steps demonstrating spontaneous remorse and recognition of the wrongdoing, which steps were designed to timely atone for any consequences of his/her misconduct.

(5) ☐ **Restitution:** Respondent paid $         on          in restitution to          without the threat or force of disciplinary, civil or criminal proceedings.

(6) ☐ **Delay:** These disciplinary proceedings were excessively delayed. The delay is not attributable to respondent and the delay prejudiced him/her.

(7) ☐ **Good Faith:** Respondent acted with a good faith belief that was honestly held and objectively reasonable.

(8) ☐ **Emotional/Physical Difficulties:** At the time of the stipulated act or acts of professional misconduct respondent suffered extreme emotional difficulties or physical or mental disabilities which expert testimony would establish was directly responsible for the misconduct. The difficulties or disabilities were not the

*"Accepted"* [handwritten annotation] *Dan Coma inc Kinkneza* *Month 10* *2016* *Yearl 201[?]*

product of any illegal conduct by the member, such as illegal drug or substance abuse, and the difficulties or disabilities no longer pose a risk that Respondent will commit misconduct.

(9) ☐ **Severe Financial Stress:** At the time of the misconduct, respondent suffered from severe financial stress which resulted from circumstances not reasonably foreseeable or which were beyond his/her control and which were directly responsible for the misconduct.

(10) ☐ **Family Problems:** At the time of the misconduct, respondent suffered extreme difficulties in his/her personal life which were other than emotional or physical in nature.

(11) ☐ **Good Character:** Respondent's extraordinarily good character is attested to by a wide range of references in the legal and general communities who are aware of the full extent of his/her misconduct.

(12) ☐ **Rehabilitation:** Considerable time has passed since the acts of professional misconduct occurred followed by subsequent rehabilitation.

(13) ☐ **No mitigating circumstances** are involved.

**Additional mitigating circumstances:**

    **No Prior Discipline:** See Attachment, page 7.
    **Pretrial Stipulation:** See Attachment, page 8.

(Do not write above this line.)

*Accepted"*
*Dan Ramirez Kirk/c*
*month 1t*
*by 12*
*year 2017 CE*

**D. Discipline:** Disbarment.

**E. Additional Requirements:**

(1) **Rule 9.20, California Rules of Court:** Respondent must comply with the requirements of rule 9.20, California Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of the Supreme Court's Order in this matter.

(2) ☐ **Restitution:** Respondent must make restitution to            in the amount of $        plus 10 percent interest per year from         . If the Client Security Fund has reimbursed        for all or any portion of the principal amount, respondent must pay restitution to CSF of the amount paid plus applicable interest and costs in accordance with Business and Professions Code section 6140.5. Respondent must pay the above restitution and furnish satisfactory proof of payment to the State Bar's Office of Probation in Los Angeles no later than        days from the effective date of the Supreme Court order in this case.

(3) ☐ **Other:**

*"Accepted"*
*Dan Romaine Kirkham*
*Day 12*
*Month 10*
*Year, 2017*

# ATTACHMENT TO
## STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION

IN THE MATTER OF:　　　　DAN ROMAINE KIRKHAM

CASE NUMBER:　　　　　　17-C-01261-DFM

**FACTS AND CONCLUSIONS OF LAW.**

Dan Romaine Kirkham ("respondent") admits that the following facts are true and that the facts and circumstances surrounding the offense for which he was convicted involved moral turpitude.

### Case No. 17-C-01261-DFM (Conviction Proceedings)

PROCEDURAL BACKGROUND IN CONVICTION PROCEEDING:

1. This is a proceeding pursuant to sections 6101 and 6102 of the Business and Professions Code and rule 9.10 of the California Rules of Court.

2. On November 15, 2000, in the United States District Court, District of Oregon, case no. CR-00-539-7-KI, in a multi-defendant matter, respondent was charged with two felonies: Count One – a violation of 18 U.S.C. section 371, conspiracy to defraud the United States, and Count Nine – a violation of 26 U.S.C. section 7201, attempt to evade and defeat the payment of tax.

3. On June 7, 2002, respondent was found guilty after jury trial of both charges; 18 U.S.C. section 371, conspiracy to defraud the United States, and 28 U.S.C. section 7201, attempt to evade and defeat the payment of tax.

4. On January 13, 2003, respondent was sentenced to 30 months in prison for Count One and 30 months in prison for Count Nine, to be served concurrently. Upon release from imprisonment, respondent was ordered to be on supervised release for a term of three years.

5. On March 23, 2004, the U.S. Court of Appeals for the Ninth Circuit affirmed respondent's conviction. Respondent filed a Petition for Writ on June 18, 2004. On October 4, 2004, the U.S. Supreme Court denied respondent's Petition for Writ of Certiorari. Respondent filed a Petition for Rehearing on October 13, 2004. On November 8, 2004, the U.S. Supreme Court denied respondent's Petition for Rehearing.

6. On July 12, 2017, the Review Department of the State Bar Court issued an order referring the matter to the Hearing Department for a hearing and decision recommending the discipline to be imposed in the event that the Hearing Department finds that the facts and circumstances surrounding the offenses for which respondent was convicted involved moral turpitude or other misconduct warranting discipline.

FACTS:

1. Beginning in March 1986 and continuing until July 2000, respondent participated in a "warehouse" bank called the Christian Patriot Association (CPA), which was a scheme designed to enable customers to conduct anonymous bank transactions and conceal income and assets from the

Internal Revenue Service (IRS). For a fee, CPA commingled the deposits of over 900 customers from across the United States in commercial bank accounts with no connection to any individual customer. CPA paid bills by writing checks drawn on the commercial bank accounts and mailed cash withdrawn from the commercial bank accounts as directed by CPA customers.

2. Between March 9, 1995 and October 2, 1996, CPA sent respondent 28 packages of cash totaling approximately $67,000.00.

3. Between October 31, 1996 and December 12, 1996, CPA sent three packages containing approximately $12,000 in cash to "Rex Ro," respondent's alias.

4. On May 20, 1993, respondent received a letter from the IRS regarding his 1990 and 1991 federal income taxes.

5. On June 10, 1993, respondent responded to the May 20, 1996 letter from the IRS stating that he had no tax liability because he had not received any income from sources within the U.S. and was not a citizen of the U.S.

6. Beginning on June 10, 1993 and continuing until at least October 27, 1997, respondent willfully attempted to evade and defeat the payment of a large part of the income and self-employment taxes, interest, and penalties due and owing by him to the U.S. for the calendar years 1990, 1991, and 1992, in the amount of approximately $693,814. Respondent failed to pay his income and self-employment tax liabilities for 1990-1992 and committed affirmative acts of evasion that were designed to hide his income and assets from the IRS.

7. Respondent's acts of evasion included, but were not limited to, emptying and ceasing use of his bank accounts in California, participating in CPA's warehouse bank operation, opening a private mailbox and accepting mail under his alias, and submitting to his employer, Melaleuca, Inc. a false social security number.

CONCLUSIONS OF LAW:

8. The facts and circumstances surrounding the above-described violations involved moral turpitude.

AGGRAVATING CIRCUMSTANCES.

**Intentional Misconduct, Bad Faith or Dishonesty (Std. 1.5(d)):** Respondent's misconduct was intentional and involved bad faith and dishonesty. Specifically, respondent repeatedly evaded the payment of taxes for three years by perpetuating a web of lies. Furthermore, based on respondent's legal knowledge, training and experience, he should have been aware that his involvement in the "warehouse bank" scheme to conceal money involved defrauding the U.S. and was a violation of his duty to uphold the laws of the country.

MITIGATING CIRCUMSTANCES.

**No Prior Discipline:** Respondent was admitted to the California State Bar on August 16, 1974. At the time of the misconduct began in or around June 10, 1993, respondent had about 19 years of discipline-free practice. (*Friedman v. State Bar* (1990) 50 Cal. 3d 235, 245 [over 20 years of practice

7

before first misconduct is highly significant even though misconduct at issue was serious]; *Hawes v. State Bar* (1990) 51 Cal.3d 587, 596 [over 10 years of discipline-free practice is entitled to significant mitigation].) However, the mitigation in this case is tempered by the serious nature of the misconduct.

**Pretrial Stipulation:** By entering into this stipulation, respondent has acknowledged misconduct and is entitled to mitigation for recognition of wrongdoing and saving the State Bar significant resources and time. (*Silva-Vidor v. State Bar* (1989) 49 Cal.3d 1071, 1079 [where mitigative credit was given for entering into a stipulation as to facts and culpability]; *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 521 [where the attorney's stipulation to facts and culpability was held to be a mitigating circumstance].)

## AUTHORITIES SUPPORTING DISCIPLINE.

The Standards for Attorney Sanctions for Professional Misconduct "set forth a means for determining the appropriate disciplinary sanction in a particular case and to ensure consistency across cases dealing with similar misconduct and surrounding circumstances." (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.1. All further references to standards are to this source.) The standards help fulfill the primary purposes of discipline, which include: protection of the public, the courts and the legal profession; maintenance of the highest professional standards; and preservation of public confidence in the legal profession. (See std. 1.1; *In re Morse* (1995) 11 Cal.4th 184, 205.)

Although not binding, the standards are entitled to "great weight" and should be followed "whenever possible" in determining level of discipline. (*In re Silverton* (2005) 36 Cal.4th 81, 92, quoting *In re Brown* (1995) 12 Cal.4th 205, 220 and *In re Young* (1989) 49 Cal.3d 257, 267, fn. 11.) Adherence to the standards in the great majority of cases serves the valuable purpose of eliminating disparity and assuring consistency, that is, the imposition of similar attorney discipline for instances of similar attorney misconduct. (*In re Naney* (1990) 51 Cal.3d 186, 190.) If a recommendation is at the high end or low end of a standard, an explanation must be given as to how the recommendation was reached. (Std. 1.1.) "Any disciplinary recommendation that deviates from the Standards must include clear reasons for the departure." (Std. 1.1; *Blair v. State Bar* (1989) 49 Cal.3d 762, 776, fn. 5.)

In determining whether to impose a sanction greater or less than that specified in a given standard, in addition to the factors set forth in the specific standard, consideration is to be given to the primary purposes of discipline; the balancing of all aggravating and mitigating circumstances; the type of misconduct at issue; whether the client, public, legal system or profession was harmed; and the member's willingness and ability to conform to ethical responsibilities in the future. (Stds. 1.7(b) and (c).)

A conviction for conspiracy to defraud the U.S. has been held to be a crime of moral turpitude. (*In re Crooks* (1990) 51 Cal.3d 1090.) In *Crooks*, the attorney was involved in a tax shelter investment scheme with another attorney. The attorney found prospective investors to invest funds and encouraged them to claim tax deductions greater than the amount of their invested funds. He also helped set up sham partnerships to be used in a check swapping scheme. The attorney was convicted of conspiracy to defraud the U.S. in violation of 18 U.S.C. § 371 and sentenced to two years in prison. The court found that the facts and circumstances surrounding the attorney's conspiracy conviction involved moral turpitude and ordered his disbarment.

Respondent was convicted of the same crime as the attorney in *Crooks, supra*, 51 Cal.3d 1090, and was involved in a scheme to defraud the government for the purpose of concealing assets from the IRS.

8

"Accepted"
Don Romo, IC of Arbitrator
Day 12 Month 10 Year 2017

Respondent participated in a "warehouse" bank in Oregon wherein his funds were commingled with others to allow him to conceal funds and conduct anonymous bank transactions. He also evaded his obligation to pay taxes for three years (from 1990 to 1992).

With respect to respondent's conviction for tax evasion, in more recent cases, the Ninth Circuit has ruled that federal tax evasion involves a specific intent to defraud the U.S. government and, therefore, constitutes moral turpitude. (*Tsueng Chu v. United States* (9th Cir. 1957) 247 F.2d 929, 936, cert. denied, 355 U.S. 892 [finding that the tax evasion crime involved moral turpitude and required specific intent to defraud the government]; *Carty v. Ashcroft* (9th Cir. 2005) 395 F.3d. 1081, 1085 [holding that "intent to evade" is synonymous with "intent to defraud"].)

The facts and circumstances surrounding respondent's convictions clearly demonstrate acts of dishonesty and deceit. Additionally, respondent's misconduct is aggravated by his intentional misconduct involving bad faith and dishonesty. Respondent's misconduct is mitigated by his discipline-free history and by entering into this stipulation. However, it is significantly tempered by the serious nature of his conviction.

In weighing the misconduct, along with respondent's mitigation and aggravation, the appropriate level of discipline is disbarment. This level of discipline is consistent with case law as cited above in *Crooks, supra*, 51 Cal.3d 1090.

In light of the foregoing, disbarment is the appropriate discipline to protect the public, the courts and the legal profession, maintain high professional standards by attorneys, and preserve public confidence in the legal profession. (Std. 1.1.)

## COSTS OF DISCIPLINARY PROCEEDINGS.

Respondent acknowledges that the Office of Chief Trial Counsel has informed respondent that as of September 22, 2017, the discipline costs in this matter are $2,629.00. Respondent further acknowledges that should this stipulation be rejected or should relief from the stipulation be granted, the costs in this matter may increase due to the cost of further proceedings.

| (Do not write above this line.) | |
|---|---|
| In the Matter of<br>**DAN ROMAINE KIRKHAM** | Case number(s):<br>17-C-01261-CV |

*[Handwritten at top right: "Accepted - Dan Romaine Kirkham Day 12 Month 10 Year 2017 C.E"]*

## SIGNATURE OF THE PARTIES

By their signatures below, the parties and their counsel, as applicable, signify their agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Fact, Conclusions of Law and Disposition.

_____    _____    Dan Romaine Kirkham
Date                                              Respondent's Signature                  Print Name

10/12/17                              *[signature]*                                 Jennifer Kishimizu Pinney
Date                                              Deputy Trial Counsel's Signature    Print Name

| In the Matter of: | Case Number(s): |
|---|---|
| DAN ROMAINE KIRKHAM | 17-C-01261-CV |

## DISBARMENT ORDER

Finding the stipulation to be fair to the parties and that it adequately protects the public, IT IS ORDERED that the requested dismissal of counts/charges, if any, is GRANTED without prejudice, and:

- [x] The stipulated facts and disposition are APPROVED and the DISCIPLINE RECOMMENDED to the Supreme Court.

- [ ] The stipulated facts and disposition are APPROVED AS MODIFIED as set forth below, and the DISCIPLINE IS RECOMMENDED to the Supreme Court.

- [x] All Hearing dates are vacated.

\* Based on his personal beliefs, respondent Dan Romaine Kirkham declined to sign the signature line on page 10 of this Stipulation. Instead, he handwrote "Accepted" and signed his name on, and dated each individual page of this Stipulation. After conducting a thorough colloquy on the record, the court is satisfied that respondent has knowingly, voluntarily, and adequately signified his understanding of, and agreement with, each of the recitations in the stipulation, each of the terms and conditions in the stipulation, and the discipline to be imposed, i.e. disbarment.

The parties are bound by the stipulation as approved unless: 1) a motion to withdraw or modify the stipulation, filed within 15 days after service of this order, is granted; or 2) this court modifies or further modifies the approved stipulation. (See rule 5.58(E) & (F), Rules of Procedure.) **The effective date of this disposition is the effective date of the Supreme Court order herein, normally 30 days after file date. (See rule 9.18(a), California Rules of Court.)**

Respondent Dan Romaine Kirkham is ordered transferred to involuntary inactive status pursuant to Business and Professions Code section 6007, subdivision (c)(4). Respondent's inactive enrollment will be effective three (3) calendar days after this order is served by mail and will terminate upon the effective date of the Supreme Court's order imposing discipline herein, or as provided for by rule 5.111(D)(2) of the Rules of Procedure of the State Bar of California, or as otherwise ordered by the Supreme Court pursuant to its plenary jurisdiction.

October 26, 2017
Date

Cynthia Valenzuela
CYNTHIA VALENZUELA
Judge of the State Bar Court

# CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on October 26, 2017, I deposited a true copy of the following document(s):

> STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APRPOVING; ORDER OF INVOLUNTARY INACTIVE ENROLLMENT

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

> DAN ROMAINE KIRKHAM
> DAN ROMAINE KIRKHAM LAW
> 420 N MCKINLEY # 111-466
> CORONA, CA 92879 - 8099

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

> ASAMI J. KISHIMIZU PINNEY, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on October 26, 2017.

Mazie Yip
Case Administrator
State Bar Court