Jason A. Thomas
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorneys for Defendant
Municipality of Anchorage

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| David Paul Biesemeyer | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| Municipality of Anchorage, | ) ) |
| Defendant. | ) ) ) Case No. 3:23-cv-00185 SLG |

## SECOND MOTION TO DISMISS

COMES NOW, the Municipality of Anchorage, by and through the undersigned; and it prays the court to dismiss the aforecaptioned case with prejudice pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1).

SUMMARY OF PLAINTIFF'S ALLEGED FACTS AND LEGAL THEORY

Plaintiff states that approximately thirty years ago, he bought real property that has been identified as Tax Parcel 016-112-10-00012 Freeman Lot 11 in Anchorage,

Alaska with a street address of 11500 Hawkins Ln, Anchorage, Alaska. [Pl.'s Comp. p. 22.] Such property herein referred to by Defendant as "Hawkins Ln."

He states that he failed to pay property tax on Hawkins Ln in the amount of $7,607.76 and that the Defendant foreclosed on that property for failure to pay taxes. [Id p. 22-23]. A judgment and decree of foreclosure was entered on May 10, 2013 and a Clerk's Deed issued on November 14, 2014. [Id p 23]. He states that the Defendant sold the property by quitclaim deed to a third party, Wehr Family Trust DTD 2008 and Larry E Wehr, et al.. [Id]. He alleges that the municipality unlawfully retained the windfall of $243,235.29. [Id. p. 23-24] He prays for the court to grant relief because the Defendant violated his rights under the takings clause of the U.S. Constitution, the guarantee of procedural due process, and excessive fines pursuant to *Tyler v. Hennenpin Cnty., Minnesota,* 598 U.S. 631 (2023).

## STANDARD OF PLEADING

For the Plaintiff's complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the Plaintiff must plead facts in greater detail than notice pleading. The Plaintiff must plead a plausible case. Although "detailed factual allegations" are not required to withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (emphasis added) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Additionally, a *pro se*

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 2 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 2 of 14

plaintiff is held to lower standards than an attorney. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011)

## PLAINTIFF'S ALLEGED CLAIMS ARE TIME BARRED

The Plaintiff's claims under 42 U.S.C. § 1983 are barred by the statute of limitations, and no effective equitable tolling exists to allow Plaintiff's claims to proceed.

Although statutes of limitations are affirmative defenses and not pleading requirements, a claim may be dismissed as untimely pursuant to a Rule 12(b)(6) motion when the running of the statute of limitations is apparent on the face of the complaint. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Induss., Inc.,* 720 F.3d 1174, 1178 (9th Cir. 2013); *Wallace v. Kato,* 549 U.S. 384, 387–88 (2007); *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003).

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Alaska statute of limitations for personal injury, A.S. 09.10.070(a) requires actions to be filed within two years of the accrual of the cause of action.

Assuming the facts plead in the Plaintiff's complaint are true for purposes of a motion to dismiss only, the accrual of this cause of action ranges from April 15, 2015 to May 11, 2015. As discussed below, *Tyler v. Hennepin Cnty,* is the cornerstone legal theory to the Plaintiff's alleged 1983 case, and that case addresses the lack of a procedure to claim the surplus proceeds from a tax foreclosure sale. Thus, the accrual date would be tax sale date or some date of notification to the Plaintiff regarding the existence of surplus proceeds. Plaintiff's Exhibit 4, as attached to the complaint, is instructive to the

date range of relevant dates of accrual. Exhibit 4, the letter from Real Estate Services states that the property was sold on April 15, 2015. The letter was dated April 29, 2015 and likely sent that day or soon after. The letter is additionally stamped as received on May 11, 2015 by the Plaintiff. The accrual date should be April 15, 2015, the date of sale of the land. Otherwise, the court could look to the accrual date being May 11, 2015 the date the Plaintiff received the letter. The difference does not have any real effect on the issue of a bar by the statute of limitations. This action was filed over eight years after May 11, 2015, the latest possible date of accrual. The issue in this case is if tolling under state law would save the Plaintiff's case not the date of accrual.

The Defendant's theory of equitable tolling does not currently exist under Alaska law, and even if it did, the tolling period is still not long enough to save the Plaintiff's case from being time barred. Tolling of the statute of limitations is an issue of state law. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The Alaska equitable tolling rule is limited to cases in which multiple legal remedies are available and time runs out while pursuing an unavailing remedy. *Kaiser v. Umialik Ins.,* 108 P.3d 876, 881 (Alaska 2005). The Plaintiff is asking the court to greatly expand the equitable tolling to include extraordinary circumstances. [Pl. Comp. p. 8]. To try and prove extraordinary circumstances, the Plaintiff states he was scammed by a self-proclaimed legal expert in Hawaii and an attorney in California [Id. p. 11-20]. As alleged by the Plaintiff, the relationship or representation ended in or around 2019-2020. [Id. p. 20]

The Alaska Supreme Court has never adopted nor rejected extraordinary circumstances as part of any tolling provision. *Richardson v. Mun. of Anchorage*, 360

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 4 of 14
Case 3:23-cv-00185-SLG-KFR Document 13 Filed 05/24/24 Page 4 of 14

P.3d 79, 85 (Alaska 2015). This court may use decisions from other jurisdictions and treatiestes to determine how the Alaska Supreme Court may rule on the Plaintiff's arguments of law. *Strother v. S. Cal. Permanente Med. Grp.,* 79 F.3d 859, 865 (9th Cir. 1996). However, *Richardson*'s dicta and other discussions within are illustrative on how the Alaska Supreme Court is likely to reject the likely claim of relying on an out-of-state lawyer as alleged in the Plaintiff's complaint. The threshold for tolling is a high standard. *Richardson* at 89. "The plaintiff must have been kept from the courts by legal barriers or by truly extraordinary events, like wars." *Richardson* ft. nt. 38. Allegedly being misled by an California attorney and a nonlawyer does not rise to extraordinary barriers to seek relief in Alaska courts. He could have sought alternative Alaska legal counsel. He did not. But even if the court finds that the statute of limitations was tolled, based on the Plaintiff's complaint, the relationship with the alleged California attorney ended at the latest in 2020. This case was filed over two years from the latest date of his alleged relationship with this attorney, and thus this case would be barred by the statute of limitations regardless of the issue of tolling.

## MONELL LIABILITY

Even if this case was not barred by the statute of limitation, the Defendant is not liable for any damages because the procedures underlying the tax foreclosure sale were not within the official municipal policy, but were instead within state statute, nor was there any constitutional violation.

A municipality, including the Defendant can only be liable under the theory outlined in *Monell v. Dep't of Social Servs. of City of N.Y.* A local governing body is not

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 5 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 5 of 14

liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978). A municipality can be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *Christie v. Iopa*, 176 F.3d 1231, 1235 (1999). "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *Id*. (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.1992).

The question if an official has final policymaking authority is a question of state law. *Id.* The Municipality has mandatory, not discretionary, obligations to tax within state statutes and procedures and once such taxation is implemented there is no discretion on the procedure, and therefore the Defendant does not have final policy making authority. The power and obligation to tax are not discretionary and cannot be surrendered. These duties stem from constitutional duties, and are delegated to the Defendant from the state's constitutional powers. "All local government powers shall be vested in boroughs and cities. The State may delegate taxing powers to organized boroughs and cities only." Alaska Const. art. X §2. "The power of taxation shall never be surrendered. This power shall not be suspended or contracted away, except as provided in this article." Alaska Const. art. IX §1.

From these constitutional powers, the state has not granted discretion in tax collection procedures. There is no discretion in the procedures of tax levy and collection. "[i]f a tax is levied on real property or on personal property, the tax must be assessed, levied, and collected as provided in this chapter." A.S. § 29.45.010(c) (2022). "The

municipality shall enforce delinquent real property tax liens by annual foreclosure, unless otherwise provided by ordinance." A.S. § 29.45.320(a) (2022). Pursuant to A.S. § 29.45.460 (2022), et. seq., the Defendant may retain a property for a public purpose, or it may sell the property to satisfy the tax debt. Following a tax sale, such as this case, the state has dictated the required procedure for disposition of the tax proceeds as stated in A.S. § 29.45.480.

The mandatory duty to tax according to state law is not an official municipal policy that would lead to liability. Instead, this mandatory tax collection framework is implemented solely pursuant to state law. Therefore, the municipality does not have the required final policymaking authority, the requirement for *Monell* liability.

Lastly, there is a good faith exception to retroactive liability when acting pursuant to binding U.S. Supreme Court caselaw and presumptively valid state law. *Danielson v. Inslee,* 945 F.3d 1096, 1097 (9th Cir. 2019). The case decision upon which the Plaintiff seeks relief, *Tyler v. Hennepin Cnty, Minnesota* (as described below) was decided after the foreclosure of the Plaintiff's property and the decision in *Nelson v. City of New York*, 352 U.S. 103 (1956) as discussed below does not imply the unconstitutionality of the foreclosure state statutes. Therefore, the good faith exception should excuse any action by the Defendant if the Defendant would be otherwise liable.

PLAINTIFF FAILS TO ALLEGE A CONSTITIONAL VIOLATION

The Defendant did not deprive the Plaintiff of a federal constitutional right and thus is not liable to the Plaintiff. As stated below, the Plaintiff was given procedural and substantive due process and was not a victim of an unlawful taking of his unclaimed

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 7 of 14
Case 3:23-cv-00185-SLG-KFR    Document 13    Filed 05/24/24    Page 7 of 14

surplus windfall from a tax foreclosure sale. Thus, this court should dismiss this case because the Plaintiff has not suffered a constitutional violation at the hands of the Defendant.

The Plaintiff states that because the Defendant retained the windfall of a tax foreclosure sale, the Defendant has violated the Plaintiff's constitutional rights by violating the Takings Clause of The United States Constitution, the guarantee of procedural due process, and imposing excessive fines and penalties.

The Plaintiff relies on a misreading of the decision in *Tyler v. Hennepin Cnty., Minnesota,* 598 U.S. 631 (2023) to explain his claim. The facts, but not the post-foreclosure procedures, in *Tyler v. Hennepin Cnty., Minnesota* are similar to this case. Hennepin County, Minnesota, sold Geraldine Tyler's home for $40,000 to satisfy a $15,000 tax bill. Instead of returning the remaining $25,000, the County kept it for itself. *Id* at 634. The foreclosure process was unremarkable up to the sale to a third party. The tax debt was a real property tax upon which the property owner has one year to pay before the taxes become delinquent. *Id* at 635. Interest and penalties accrue and upon tax foreclosure, the county can obtain a judgment against the property and get limited title to the property, subject to a redemption period. *Id.* In this redemption period, a party can regain title by paying all late fees and taxes. *Id.* After the expiration of the redemption period, absolute title vests in the state and the property can be sold to a third party. *Id.* If there is a surplus, the property owner has no opportunity to recover the surplus. *Id.* The lack of opportunity to recover the surplus is where the violation of constitutional rights lies, as explained below.

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 8 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 8 of 14

The court held that the county had the power to sell and recover the unpaid property tax. *Id* at 639. However, the lack of a procedure to claim the excess windfall of the sale of the property to a third party renders the post-tax foreclosure procedure an unconstitutional taking, not the fact that there was not an automatic check written to the former owner. The court in *Tyler* distinguished its ruling from a ruling in a previous case, *Nelson v. City of New York.,* 352 U.S. 103 (1956) where the court upheld a foreclosure process in which the former owner forfeited his right to the surplus. In *Nelson,* the City of New York foreclosed upon properties for unpaid water bills. *Id.* at 105. The codified procedural requirements were followed in the foreclosure; a redemption period followed; and one property was later sold to a third party. *Id* at 106. In *Nelson,* the parties make a claim, like in this case, that retaining the excess of the post-foreclosure sale is an unconstitutional taking. Yet, the court found for the City of New York finding that there was not a violation of due process or an unconstitutional taking because the former owners had an ability to make a claim to their property right in the court directed sale but did not do so. *Id* at 110-111.

The court made it clear that it was not overruling *Nelson*, but instead distinguishing *Tyler* from *Nelson* based on the lack of a procedure to claim the proceeds:

> [… ] [In *Nelson*] a property owner had almost two months after the city filed for foreclosure to pay off the tax debt, and an additional 20 days to ask for the surplus from any tax sale. *Id.*, at 104–105, n. 1, 77 S.Ct. 195. No property owner requested his surplus within the required time. The owners later sued the city, claiming that it had denied them due process and equal protection of the laws. *Id.*, at 109, 77 S.Ct. 195. In their reply brief before this Court, the owners also argued for the first time that they had been denied just compensation under the Takings Clause. *Ibid.* We rejected this belated argument. *Lawton* had suggested that withholding the surplus from a property owner always violated the Fifth Amendment, but there was no specific procedure there for recovering the surplus. *Nelson*, 352 U.S., at

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 9 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 9 of 14

> 110, 77 S.Ct. 195. New York City's ordinance, in comparison, permitted the owner to recover the surplus but required that the owner have "filed a timely answer in [the] foreclosure proceeding, asserting his property had a value substantially exceeding the tax due." *Ibid.* (citing *New York v. Chapman Docks Co.*, 1 App.Div.2d 895, 149 N.Y.S.2d 679 (1956)). Had the owners challenging the ordinance done so, "a separate sale" could have taken place "so that [they] might receive the surplus." 352 U.S., at 110, 77 S.Ct. 195. The owners did not take advantage of this procedure, so they forfeited their right to the surplus. Because the New York City ordinance did not "absolutely preclud[e] an owner from obtaining the surplus proceeds of a judicial sale," but instead simply defined the process through which the owner could claim the surplus, we found no Takings Clause violation. *Ibid.*

*Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. at 644.

After comparing *Tyler* and the previous case *Nelson,* the outcome of this case depends on the presence or lack thereof of a procedure to claim the surplus of a foreclosure sale. Alaska Statutes track similarly to Minnesota's foreclosure process as outlined in *Tyler v. Hennepin Cnty, Minnesota* up to the point of the sale of the property to a third party. The Defendant is allowed to tax real property pursuant to A.S. § 29.45.010 et. seq. and may charge interest and penalties pursuant to A.S. § 29.45.250. Like Hennepin County, the Defendant enforces tax collection by foreclosure pursuant to A.S. § 29.45.320. After a tax foreclosure, title vests in the Defendant, but there is a redemption period of one year during which a party may pay in full taxes, fees, and penalties and gain full title back from the Defendant. *See* A.S. § 29.45.400. Unredeemed properties' titles vest in full to the Defendant for its foreclosed properties. *See* A.S. § 29.45.450. The property may then be sold to a third party pursuant to A.S. § 29.45.460.

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 10 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 10 of 14

Unlike Minnesota statutes, Alaska statutes codified a procedure to claim the surplus of a tax foreclosure sale. The former property owner can claim the proceeds of a tax foreclosure sale under A.S. 29.45.480:

> (a) On sale of foreclosed real or personal property the municipality shall divide the proceeds less cost of collection, between the borough and the city having unpaid taxes against the property. The division is in proportion to the respective municipal taxes against the property at the time of foreclosure.
>
> (b) If tax-foreclosed real property that has been held by a municipality for less than 10 years after the close of the redemption period and never designated for a public purpose is sold at a tax-foreclosure sale, the former record owner is entitled to the portion of the proceeds of the sale that exceeds the amount of unpaid taxes, the amount equal to taxes that would have been assessed and levied after foreclosure if the property had continued in private ownership, penalty, interest, and costs to the municipality of foreclosing and selling the property, and costs to the municipality of maintaining and managing the property that exceed amounts received by the municipality for the use of the property. If the proceeds of the sale of tax-foreclosed property exceed the total of unpaid and delinquent taxes, penalty, interest, and costs, the municipality shall provide the former owner of the property written notice advising of the amount of the excess and the manner in which a claim for the balance of the proceeds may be submitted. Notice is sufficient under this subsection if mailed to the former record owner at the last address of record of the former record owner. On presentation of a proper claim, the municipality shall remit the excess to the former record owner. A claim for the excess filed after six months of the date of sale is forever barred.

Unlike in *Tyler v. Hennepin Cnty, Minnesota,* the Plaintiff is entitled to the portion of the proceeds of the sale that exceed the sum of the unpaid taxes, penalties, interests, and costs if a proper claim is made. *Id.* The former property owner has six months from the sale of the property to make a valid claim. *Id.* It is this entitlement to the surplus upon submitting a valid claim to the municipality pursuant to statute that protects the Plaintiff from a constitutional taking pursuant to *Tyler v. Hennepin Cnty.* Because there exists a

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 11 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 11 of 14

procedure to make a claim in Alaska law, there is not an unconstitutional taking under the rationale in *Tyler v. Hennepin Cnty*. Instead, a permissible foreclosure framework with a procedure to claim the surplus windfall similar to the upheld procedure in *Nelson* is implemented in Alaska. The situation in this case is the same as in *Nelson* and best summarized in *Tyler,* "The owners did not take advantage of this procedure, so they forfeited their right to the surplus." *Tyler v. Hennepin Cnty., Minnesota,* 598 U.S. at 644. Just as the owners in *Nelson* did not take advantage of the procedure to claim a surplus, the Plaintiff did not present a valid claim and is not entitled to the surplus of the tax sale.

## THERE IS NO PROCEDURAL DUE PROCESS VIOLATION

Finally, the Plaintiff makes the argument that a six-month window in which to make a claim for the excess windfall surplus violates his rights to procedural due process. This claim must also fail. As quoted in *Tyler,* the court allowed the foreclosure process in *Nelson* to stand despite it having a vastly shorter time frame to make a claim. In *Nelson*, the parties did not have six months to make a claim for excess proceeds. Instead as stated above, the parties only had twenty days after the sale to make a claim, and the court upheld such a procedure. The Defendant may find the six-month period after a sale to be a short time period, but that does not make it a violation of procedural due process.

## THERE IS NOT AN ACTIONAL CLAIM FOR EXCESSIVE FINES OR CRUEL AND UNUSUAL PUNINISHMENT

The Plaintiff has not plead any facts that would lead to a plausible claim of an excessive fine or cruel and unusual punishment. The court lacks subject matter

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 12 of 14
Case 3:23-cv-00185-SLG-KFR    Document 13    Filed 05/24/24    Page 12 of 14

jurisdiction from hearing any challenges to the tax assessment and collection process regarding the tax foreclosure process pursuant to 28 U.S. Code § 1341:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The Defendant tries to make claims involving being a tax protestor and how the foreclosure of his former property is an excessive fine or cruel and unusual punishment. These arguments involve the assessment and collection of taxes authorized under state law through foreclosure and are outside of this court's subject matter jurisdiction and subject to dismissal under Fed. R. Civ. P. Rule 12(b)(1) because the Plaintiff is able to challenge any tax foreclosure in state court.

    The retention of any surplus process after the failure of the Plaintiff to make a valid claim does not constitute cruel and unusual punishment. The Plaintiff was entitled to the surplus of the tax sale less allowable fees and costs. However, he did not make a valid claim. Because he had the right to claim any surplus proceeds above and beyond lawful levied taxes, interest and other authorized fees and expenses, he was not subjected to any excessive fines or cruel and unusual punishment.

WHEREFORE, the Defendant prays the court to:

1. DISMISS the Plaintiff's complaint WITH PREJUDICE because the Plaintiff has amended his complaint once previously, and
2. Any other necessary and just relief.

    Respectfully submitted this 24th day of May, 2024.

ANNE R. HELZER

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 13 of 14
Case 3:23-cv-00185-SLG-KFR   Document 13   Filed 05/24/24   Page 13 of 14

Municipal Attorney

By: /s Jason A. Thomas
    Jason A. Thomas
    Municipal Attorney's Office
    P.O. Box 196650
    Anchorage, Alaska 99519-6650
    Phone: (907) 343-4545
    Fax: (907) 343-4550
    E-mail: uslit@muni.org
    Alaska Bar No. 2005028

Certificate of Service
The undersigned hereby certifies that on May 24, 2024, a true and correct copy of the foregoing was served on:

David Biesemeyer
7650 E. Jim Cottrell
Palmer, AK 99645
davebiesemeyer@hotmail.com

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

/s *Jason A. Thomas*
Jason A. Thomas, Assistant Municipal Attorney
Municipal Attorney's Office

Second Motion to Dismiss
*Biesemeyer, David v MOA*; Case No. 3:23-cv-00185 SLG
Page 14 of 14
Case 3:23-cv-00185-SLG-KFR Document 13 Filed 05/24/24 Page 14 of 14